IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STI HOLDINGS, INC.,
   f/k/a STOUGHTON TRAILERS, INC.,

                         Plaintiff,

   v.

GREAT DANE LIMITED PARTNERSHIP,

                      Defendant.

ORDER CONSTRUING CLAIMS

09-cv-570-slc

---

     Plaintiff STI Holdings, Inc. owns United States Patents Nos. 6,450,564 (the '564 patent) and 6,578,902 (the '902 patent), which claim a "wall joint" and a "cargo body" comprising panels and a joint between each pair of panels.  Plaintiff contends that the Composite Trailers manufactured, used, sold and offered for sale by defendant Great Dane Limited Partnership infringe the two patents.  Before the court for construction are three terms in the patents:  "main plateau,"[1] "having" and "panel."[2]

     Most of the disputed terms appear in the independent claims 1 and 15 of the '564 patent and claims 1 and 16 of the '902 patent.  Claim 1 of the '564 patent reads as follows (disputed terms are in bold type):

> 1.  A wall joint comprising:
>
> a first **panel having a main plateau** defining a first plane, a spliced plateau defining a second plane substantially parallel to and spaced-apart from the first plane, and a jogged portion

---

[1] The parties initially identified the disputed term as "main plateau defining a first plane." However, there appears to be no dispute over the meaning of the phrase "defining a first plane." Accordingly, I will address only the term "main plateau."

[2] In a March 12, 2010 order, I stated that I would also construe the term "a single plate." Dkt. 30.  From the parties' responsive briefs, however, it appears that there is no concrete dispute requiring construction of this term, so I will not construe it.

interconnecting the main plateau and the spliced plateau, the spliced plateau and main plateau being substantially the same thickness;

a second **panel having a main plateau** lying generally in the first plane, a spliced plateau lying generally in the second plane, and a jogged portion interconnecting the main plateau and the spliced plateau, the spliced plateau and main plateau being substantially the same thickness; and

a splicer coupled to the spliced plateaus of both the first and second panels.

Claim 15 of the '564 patent reads in relevant part as follows:

15.  A cargo body, comprising:

a plurality of **panels** arranged in side-by-side relationship to define pairs of adjacent first and second **panels**;

a joint between each pair of adjacent first and second **panels**, each joint being at least partially defined by an edge of the first **panel** and an edge of the second panel adjacent to the first **panel**, the **first panel having a main plateau** . . .

The '902 patent is a continuation of the '564 patent and contains the same relevant claim language and same wording of the specification, but with additional disclosures dealing with "logistical apertures," which are not an issue in this lawsuit.  To keep things simple, I will cite solely to the '564 patent in this opinion, but I am construing the terms to have the same meaning in both the '564 and '902 patents.

OPINION

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim," as interpreted in light of the  intrinsic evidence such as the patent specification, drawings and the prosecution history.  *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1324-25 (Fed. Cir. 2002).  "Claim construction must adhere carefully to the precise language of the claims that the patent [examiner] has allowed."  *Ardisam, Inc. v. Ameristep, Inc.*, 336 F. Supp. 2d 867, 879 (W.D. Wis. 2004) (citation omitted).  There is a heavy presumption that a claim term carries its ordinary and customary meaning as it would be understood by one of ordinary skill in the relevant art, given its context and the other patent claims.  *Teleflex*, 299 F.3d at 1325; *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). Although dictionaries and treatises may be used in this endeavor, courts must remain aware that the patent applicant may not have used words consistent with the dictionary definition.  *Ardisam*, 336 F. Supp. 2d at 879-80 (quoting *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004), in turn quoting *Teleflex*, 299 F.3d at 1327).

The initial construction is considered in light of the specification to determine whether the patentee expressed a different meaning for the language, whether the preferred embodiment is consistent with the initial interpretation and whether the patentee specifically disclaimed certain subject matter.  *Rexnord*, 274 F.3d at 1342-43.  The specification contains a written description of the invention that is meant to help explain the invention and possibly define claim terms, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), but as a rule, "limitations from the specification are not to be read into the claims." *Golight*, 355 F.3d at 1331. Next, the interpretation is examined for consistency with the patent's prosecution history and

any disclaimers made therein. *Rexnord*, 274 F.3d at 1343; *see also Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363, 1370 (Fed. Cir. 2008)(claims are read in view of the specification, which is the single best guide to the meaning of disputed terms; however, the court will not at any time import limitations from the specification into the claims).

Finally, a court may consult extrinsic evidence, such as dictionaries, treatises and expert testimony for background information and to "shed useful light on relevant art." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (internal citations omitted). In general, this type of evidence is less reliable than intrinsic evidence in determining the meaning of claim terms and is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id*. at 1318-19.

## I.  "Main plateau"

**Plaintiff's proposed construction**: "a portion of a trailer or container wall panel which constitutes the main or greater part of that wall panel."

**Defendant's proposed construction**:  no construction; or, "a portion of a panel."

### A.  Relative size requirement

The term "main plateau defining a first plane," which describes an element of the panels used in the patented joint configuration, appears in independent claims 1 and 15 of the '564 patent and claims 1 and 16 of the '902 patent. Plaintiff contends that the term "main" is used as an expression of relative size, namely that the "main" plateau constitutes the greater portion of the wall panel on which it is found. Defendant contends that the term "main plateau" merely

designates the portion of the panel that is not the spliced plateau or the jogged portion between them.

Nothing in the claims supports plaintiff's construction.  Although "main," is a comparative adjective, it does not necessarily or even usually mean "proportionately larger."  As plaintiff acknowledges, the plain and ordinary meaning of the word "main," when used as an adjective, is "chief" or "principal," terms that do not imply relative size.  Plaintiff cites to the court's definition of the word "main" to mean "chief in size" in *Glaxo Group Ltd. v. TorParm, Inc.*, 153 F.3d 1366 (Fed. Cir. 1998).  In *Glaxo*, the defendant argued that "main" should be given its dictionary definition of "chief in size, extent or importance; principal; leading." *Id.* at 1374. The court agreed that from the intrinsic record in the case before it, "main," when modifying "peaks" on a spectrograph, meant "chief in size" among peaks on an infra-red spectrum.  The court, however, found this to be a non sequitur because defendant was trying to convince the court to compare the main peaks to the wrong compound, one that was not a subject of the claim.  *Id.*  All that *Glaxo* tells us is that "main" *can* mean "biggest" in some contexts, something that we already know from the dictionary definition.

Plaintiff also points to the preferred embodiment, which states that "the main plateaus preferably comprise the bulk of the interior, generally smooth-walled, surface of the cargo body, interrupted only by periodic recessed regions created by the spliced plateaus at the seams between the sidewall panels." '564 Patent, 2:58-63.[3]  Plaintiff further argues that its proposed construction is most consistent with the invention's goal of reducing protrusions into the interior

---

[3]  *See also* '564 Patent, 4:37-39 ("In reality, main plateaus **17, 18** . . . preferably make up the majority of panels **15, 16** and therefore, of an interior wall surface **38** of the trailer") and 4:42-44 ("in reality, the various sidewall panels preferably extend laterally a distance several times the width of joint **14**.")

of the trailer.   As plaintiff acknowledges, however, preferred embodiments are not to be read

into the claims unless specifically claimed.   The claims themselves say nothing about the size of

the main plateau relative to the spliced plateau, and the claims do not indicate that the main

plateaus must make up the bulk of the interior of the cargo body or require a smooth-walled

construction.   Indeed, the patentee seemed rather keen on ensuring the broadest possible reach

of his patent:

> The various elements and combinations of elements described
> below and illustrated in the drawings can be arranged and
> organized differently to result in embodiments which are still
> within the spirit and scope of the present invention.

'564 Patent, 3:30.

If the patentee had wanted to claim an invention having a panel with a "main" plateau

that was proportionately larger in size than the spliced plateau, it would have been easy to say

this in the claims.   To the contrary, by stating in the specification that it *preferred* the main

plateaus to comprise the bulk of the interior of a cargo body but then failing to incorporate this

preference into the claims, the patentee essentially disavowed this limitation.   *See Halliburton

Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) (specification's statement

that gel drilling fluid "preferably" contain no organophilic clays strongly suggests that absence

of clays was simply preferred embodiment); *see also Acumed LLC v. Stryker Corp.*, 483 F.3d 800,

807 (Fed. Cir. 2007) (it is improper to read a feature of the preferred embodiment into the

claims as a limitation).   If anything, the patentee's word and phrase choices suggest that he was

aiming for the broadest possible coverage of his patent.

Accordingly, I decline to construe the term "main" as expressing any relative size

requirement.

6

**B. Limitation to trailers or other cargo-carrying containers**

In its initial motion for claims construction, plaintiff also asked the court to construe the term "main plateau" as a "portion of a trailer wall panel." Defendant objected, asserting that there is no language in the claims defining a "wall joint" (claim 1 of both patents) or in the claims defining a "cargo body" (claim 15 of the '564 patent and claim 16 of the '902 patent) that limits "main plateau" to trailers. Indeed, noted defendant, the patentee defined the term "cargo body" in the specification as referring to "the sidewalls of a trailer, cargo container, truck body or other cargo carrying body." '564 patent, 1:17- 20. In response, plaintiff concedes that the claims are not limited to trailers but also apply to containers, cargo bodies or any other structure designed to contain cargo. Pl. Response, dkt. 33, at 3 n.2. Plaintiff appears to be taking the position that this limitation applies not only to the "cargo body" claims but even to the "wall joint" claims.

From the perfunctory nature of plaintiffs' response, along with defendant's assertion that the patent claims and the specification "do not support limiting the claims to a trailer," Def.'s Br. in Supp., dkt. 27, at 5, it is unclear whether an actual dispute remains regarding the scope of the claims. Absent a clear indication that a concrete dispute requiring construction remains, I decline to address this issue at this time. Plaintiffs may renew their request that the claims should be limited to trailers, containers or other cargo-carrying structures if they deem such a construction necessary at the summary judgment phase.

**Court's construction: "main plateau" means "a portion of a panel."**

## II.  "Having [a]"

**Plaintiffs' proposed construction:**  "having only"

**Defendant's proposed construction:**  "having at least"

The transitional phrase "having" appears in all independent claims of the patents-in-suit and is used to define the panels of the invention.  The parties agree that "having" must be interpreted in light of the specification to determine whether open or closed language is intended, *see Lampi Corp. V. American Power Products, Inc.*, 228 F.3d 1365, 1376 (Fed. Cri. 2000), but they disagree on where this will lead us.  Plaintiff advances a closed construction, contending that the term "having" is meant not only to exclude additional elements, but also to restrict the number of named elements.  In other words, the panels must have only *one* main plateau, *one* spliced plateau, *one* jogged portion and cannot have any additional plateaus, jogged portions or anything else.  Defendant contends that the term is meant to be open, meaning that the recited elements of a main plateau, spliced plateau and jogged portion are only part of the invention and that the claim does not exclude additional, unrecited elements.  *See, e.g., Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) (use of an open term like "comprising" means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim).

The transitional phrase "having" can make a claim open but  it is not presumed to do so (in contrast to "comprising," which is presumptively open).  *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001).  To determine whether the term is meant to be open or closed, the court must look for clues in the claims or in the

specification. *Lampi Corp. v. American Power Products, Inc.*, 228 F.3d 1365, 1376 (Fed. Cir. 2000). For example, in *Enzo Biochem, Inc. v. Applera Corp.*, 2006 WL 2927500, *9 (D. Conn. 2006), the court noted that the patentee had used the term "having" differently from the term "comprising." Specifically, in the claims using the word "comprising," the patentee had used language such as "at least one of," which signaled that it intended "comprising" to have an open meaning. In contrast, the patentee did not modify the term "having," which was always stated in the form "a compound having the structure." From this observable dichotomy, the court determined that the two terms had different constructions, with "comprising" being an open term and "having" being a closed term. *Id*.

Citing *Enzo*, plaintiff argues that the patentee's use of the open term "comprising" in the same claim containing the word "having" is evidence that the terms should be construed differently. In contrast to the patent in *Enzo*, however, here the patent does not use the phrase "comprising at least one of" or any other modifier signifying that the term has a meaning different from "having." Contrary to plaintiff's argument, the mere fact that the term "comprising" is used to describe the wall joint and the term "having" is used to describe the elements of the panels is not strong proof that the patentee intended the terms to have different constructions. To the contrary, the patentee's word choice in the specification suggests that it intended the word "having" to have an open construction. Lines 17-20 at Col. 4 of the '564 patent read:

> Referring specifically to **FIG. 2**, fore sidewall panel **15** *includes* a main plateau **17**, a spliced plateau **19**, and a jogged portion . . .Similarly, aft sidewall panel **16** *includes* a main plateau . . . (emphasis added).

"The word 'includes' is a patent law term of art meaning 'comprising'; it is an 'open ended' term allowing other elements to be included in the meaning of a term." *The First Years, Inc. v. Munchkin, Inc.*, 575 F. Supp.2d 984, 998 (W.D. Wis. 2008); *see also SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1284 (Fed. Cir. 2005) ("includes" means "comprising"); *Medichem S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003) ("comprising" is "open ended" term). The use of "includes" in the specification suggests that the patentee contemplated an invention that did not exclude a panel having elements other than a main plateau, spliced plateau and jogged portion, or a panel having multiple spliced plateaus and jogged portions. Absent evidence to the contrary, I presume that the patentee had this same intent when drafting the claims.

In addition, in the disputed portions of Claim 1, the word "having" is followed by "a." The word "a" can have "its normal singular meaning" or can mean "one or more," depending on how the patentee uses the term. *See, e.g., North American Vaccine Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1575-76 (Fed. Cir. 1993). Here, it appears that when the patentee wanted to limit the elements to no more than one of each, he used the phrase "a single," as he did in claims 5 and 19, which refer to a splicer comprised of "a single plate" of rigid material. The use of the simple article "a" after the word "having" in Claim 1 as opposed to "a single" suggests that the patentee did not intend to similarly limit Claim 1.

Finally, as defendant points out, it would seem that in order to join a plurality of first and second panels to form the cargo body described in Claim 15 and achieve the goal of a smooth-walled interior, each panel except the first and last in a multipanel cargo body would have to have a main plateau, *two* spliced plateaus, and *two* jogged portions. (At first blush, Claim 15 might seem to account for this by defining a "cargo body" comprised of *pairs* of first and second

10

panels with a joint between each adjacent pair of first and second panels, but a closer reading suggests that Claim 15 merely is explaining how to join a plurality of first and second panels to form a cargo body.)  Because of the timing of the briefing schedule, plaintiff did not have an opportunity to respond to this argument, so I am not relying on it to find that the term "having" is an open term.  Nonetheless, it does support the notion that as used in this patent, the term "having" means "having at least."

> **Court's construction: "having a"** means **"having at least one."**

## III.  "Panel"

**Plaintiffs' proposed construction:**  none, or, "a large unitary piece of construction material that forms a trailer wall when coupled to other large unitary pieces of construction material"[4]

**Defendant's proposed construction:** "a distinctive part of a construction surface or material"

The term "panel" is used in all claims of the patents-in-suit.  Claim 1 of both patents recites a wall joint comprising a first panel and a second panel.  Claim 15 of the '564 patent and claim 16 of the '902 patent recite a cargo body comprising a plurality of panels.  The parties' dispute over the meaning of this term centers on whether a panel is a discrete structure (plaintiff's position) or merely a part of a construction surface or material (defendant's position).

---

[4]  In its reply brief, plaintiff argues that "panel" means "a discrete piece of construction material capable of being coupled to another discrete piece of construction material" although it does not explicitly advocate this as a proposed construction.  *See* dkt. 33 at 6.

Defendant's contention that a "panel" must be part of a construction surface or material as opposed to a discrete structure is not supported by the claims or the specification.  All of the references to "panel" in the claims are consistent with a panel being a discrete structure.  The patent is titled "Wall Joint Configuration," the invention "relates generally to devices and configurations fo joining panels" ('654 Patent, 1:1-2), and it teaches a configuration for joining "a pair of adjacent first and second panels" with "each joint being at least partially defined by an edge of the first panel and an edge of the second panel adjacent to the first panel."  '546 Patent, Claim 15.  Claim 10 refers to a wall joint comprising first and second panels located substantially in the same plane, coupled together by a splicer plate.  Claim 13 claims a joint composed of panels "having a first core material sandwiched between layers of a second material, different from the first core material."

All of these references suggest that the term "panel," as used in the patents-in-suit, is a unitary structure and not merely a "part" of a structure.  Further, the preferred embodiment depicted in Figure 1 shows 13 separate sidewall "panels" joined together using the patented invention to create a sidewall.  If the panels were merely a portion of a construction surface or material, as defendant proposes, there would be nothing to join.

**Court's construction: "panel"** means **"a discrete structure capable of being coupled to another discrete structure."**

ORDER

IT IS ORDERED that:

The terms disputed by plaintiffs Stoughton Trailers, LLC and STI Holdings, Inc., f/k/a Stoughton Trailers, Inc. and defendant Great Dane Limited Partnership in United States Patents Nos. 6,450,564 and 6,578,902 are construed as follows:

1.  "Main plateau" means **"a portion of a panel;"**

2.  "Having a" means **"having at least one,"** an open term that does not preclude additional elements; and

3.  "Panel" means a **"discrete structure capable of being coupled to another discrete structure."**


Entered this 11th day of June, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge